IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA, for
the use of MANAGEMENT AND
CONSTRUCTION SERVICES, LLC,
*et al.*,

    *Plaintiffs,*

    *v.*

                                Civil Action No. ELH-20-1232

SAYERS CONSTRUCTION, LLC, *et
al.*,

    *Defendants.*

## MEMORANDUM OPINION

This Memorandum Opinion resolves a motion to dismiss one of sixteen claims in a dispute between a contractor and a subcontractor.  Plaintiff, the United States of America, for the use of Management and Construction Services, LLC ("MCS"), has filed suit alleging that MCS, the subcontractor, performed work for Sayers Construction, LLC ("Sayers Construction," "Sayers," or "SC"), a contractor, for which MCS was not paid in full.[1]  The work was performed across seven projects, pursuant to a contract with the United States Navy.

The Second Amended Complaint (ECF 57) is the operative complaint.  It is supported by several exhibits.  As discussed, *infra*, the Second Amended Complaint names multiple defendants.

The case arises, in part, under the Miller Act, 40 U.S.C. § 3131, *et seq.*, which concerns federal contractors.  The Miller Act creates a cause of action to recover on a payment bond issued pursuant to a qualifying contract.  *Id.* § 3133(b).  Such an action must be filed "in the name of the

---

[1] The Second Amended Complaint, which is the operative complaint, refers collectively to the United States of America, for the use of MCS, and MCS as "Plaintiffs."  ECF 57 at 1.  However, for clarity, I shall refer to "plaintiff" in the singular.  *See* § 3133(b)(3)(A).

United States for the use of the person bringing the action." *Id.* § 3133(b)(3)(A).  MCS seeks to recover on the payment bonds issued by the sureties of Sayers Construction, pursuant to the Miller Act.  Plaintiff also asserts various claims founded on Maryland law.

This Memorandum Opinion does not address the claims asserted under the Miller Act.  Nor does it address most of the State law claims.  Rather, only Count XIII is in issue.  In that Count, plaintiff lodges a claim for breach of fiduciary duty against Mark Sayers ("Mr. Sayers"), the "officer, director, or agent in control of Sayers Construction."  ECF 57 at 2.

Mr. Sayers has moved to dismiss Count XIII, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 58 (the "Motion").  MCS filed an opposition (ECF 64), supported by exhibits.  Mr. Sayers replied. ECF 69.  Where appropriate, I shall refer to Sayers Construction and Mr. Sayers collectively as the "Sayers Defendants."

No hearing is necessary to resolve the Motion.  *See* Local Rule 105(6).  For the reasons that follow, I shall grant the Motion.

## I. Background[2]

### A.

MCS is a Maryland limited liability company ("LLC") and contractor for construction services.  ECF 57, ¶¶ 1, 10.  It primarily serves governmental entities in Maryland and Washington, D.C.  *Id.* ¶ 10.  Sayers is a Texas LLC that "holds itself out as an electrical construction and engineering company."  *Id.* ¶ 11; *see id.* ¶ 2.

---

[2] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  The Court may consider documents attached to the Complaint or the Motion, "so long as they are integral to the complaint and authentic."  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

MCS filed suit against the Sayers Defendants in the Circuit Court for Anne Arundel County.  ECF 2.  The suit asserted various claims founded on Maryland law.  *See id.*  Two claims were lodged against Mr. Sayers individually: Count IV, which alleged a violation of the Maryland Construction Trust Fund Statute, Md. Code. (2015 Repl. Vol., 2020 Supp.), §§ 9-201, *et seq.*, of the Real Property Article ("R.P."); and Count VI, which alleged a breach of fiduciary duty.  ECF 2 at 6-7, 9-10.

The Sayers Defendants timely removed the suit to this Court, pursuant to 28 U.S.C. §§ 1332, 1441, 1446.  ECF 1.  Shortly thereafter, MCS filed a one-sentence submission, voluntarily dismissing the claim brought under the Maryland Construction Trust Fund Statute.  ECF 12.

MCS subsequently obtained leave to amend the suit (ECF 21) and filed a First Amended Complaint.  ECF 22.  The First Amended Complaint added two defendants to the case: Nationwide Mutual Insurance Company ("Nationwide") and Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") (collectively, the "Surety Defendants").  *Id.*  Plaintiff alleged that the Surety Defendants issued payment bonds as to certain projects, and it asserted claims against the Surety Defendants under the Miller Act, 40 U.S.C. § 3131, *et seq. Id.* at 5, 7-9, 15-19.

The First Amended Complaint also included a claim against Mr. Sayers for breach of fiduciary duty.  *See* ECF 22 at 21 (Count XI).  Mr. Sayers moved to dismiss that claim.  ECF 33. MCS then sought leave to amend, with defendants' consent.  ECF 55 at 5.  By Order of October 16, 2020 (ECF 56), I granted leave to amend and denied ECF 33 as moot, because it was directed to the First Amended Complaint, which was superseded.  The denial as to ECF 33 was without prejudice to the right of Mr. Sayers to seek dismissal of the Second Amended Complaint.  *Id.*

The Second Amended Complaint contains sixteen counts and is supported by nine exhibits, discussed, *infra*.  Counts I through VII, as well as Count XVI, assert breach of contract against

Sayers Construction.  ECF 57 at 15-25, 38.  Counts XII, XIV, and XV lodge other claims arising under State law against Sayers.  *Id.* at 33, 36-37.  Counts VIII through XI are directed to the Surety Defendants, and lodge claims under the Miller Act, 40 U.S.C. § 3131.  *Id.* at 27-32.  And, in Count XIII plaintiff asserts a claim against Mr. Sayers for breach of fiduciary duty.  *Id.* at 34.

The Motion followed.  The facts recounted below are those generally pertinent to the Motion.[3]

On January 31, 2018, MCS and Sayers Construction "entered into a general teaming agreement for the purpose of performing construction projects."  *Id.* ¶ 12; *see* ECF 57-1 ("Teaming Agreement" or "Agreement").  Mr. Sayers, the President of Sayers Construction, signed the Agreement on the behalf of Sayers.  ECF 57-1 at 2, 9.

According to the Teaming Agreement, "SC is an SBA Section 8(a)certified [sic] company, eligible for set-aside contracts in those categories, and MCS is a consultant business, each of whose performance capabilities render each Party a valuable resource to each other."  *Id.* at 2.[4]  In

---

[3]  I need not include facts as to claims that are not implicated by the Motion.  There have also been other developments in the case, which are not at issue here.  For example, the Sayers Defendants filed an answer and counterclaims against MCS.  ECF 75.  As to Count XIII of the Second Amended Complaint, the Sayers Defendants state in their answer: "Count 13 is currently subject to Defendant Mark Sayers' Amended Motion to Dismiss under Rule 12(b)(6)."  MCS answered the Sayers Defendants' counterclaims.  ECF 83.  And, each of the Surety Defendants answered the Second Amended Complaint.  ECF 71; ECF 76.

[4] Presumably, "SBA" refers to the U.S. Small Business Administration.  According to the SBA's website, the goal of the "8(a) Business Development program" is "to award at least 5 percent of all federal contracting dollars to small disadvantaged businesses each year."  *8(a) Business Development program*, U.S. Small Business Administration, https://www.sba.gov/federal-contracting/contracting-assistance-programs/8a-business-development-program (last accessed Apr. 7, 2021).

The Court may take judicial notice of such adjudicative facts, pursuant to Fed. R. Evid. 201.

addition, the Teaming Agreement provides: "(a) SC will act as the prime contractor and MCS will act as a consultant and/or prime subcontractor with respect to set-aside contracts for which SC is eligible ("Set-Aside Contracts"), and (b) MCS will act as the prime contractor and SC will act as a subcontractor with respect to other business opportunities as deemed fit for both parties." *Id.*

Paragraph 8 of the Agreement is titled "Payments/Compensation/Fee Reimbursement." It states, in relevant part: "SC will be entitled to 50% of the G&A and Profit and MCS will be entitled to 50% of the G&A and Profit. Unless stated differently in each proposal submission and agreed upon." *Id.* at 5, ¶ 8.[5] "Exhibit A" to the Teaming Agreement, which is titled "Statement of Work," similarly states that for "Procurements resulting in Set-Aside Contracts," Sayers Construction and MCS would each receive fifty percent "of the G&A and Profit." ECF 57-1 at 12.

MCS and Sayers Construction "operated under the Teaming Agreement with little to no issues" for more than a year. ECF 57, ¶ 16. "MCS would perform its scope of work, and Sayers Construction would pay MCS as agreed." *Id.*

Thereafter, the two companies entered into seven additional agreements ("Subject Agreements") pertaining to construction projects for the Navy ("Subject Projects"). *Id.* ¶¶ 17, 18.[6] Detailed allegations are included in the suit as to the Subject Projects, but not all of the allegations are relevant to the Motion. *See* ECF 57 at 5-14. Although the Second Amended Complaint does not explicitly specify that MCS was to act as the subcontractor for the Subject Projects, that fact is reasonably inferable from the pleading as a whole. *See, e.g.*, *id.* ¶¶ 13, 16, 55, 68, 71, 82.

---

[5] "G&A" likely refers to general and administrative expenses. *See, e.g.*, *Fluor Fed. Sols., LLC v. PAE Applied Techs., LLC*, No. 1:16-CV-215 (AJT/JFA), 2017 WL 3709087, at *1 (E.D. Va. Mar. 9, 2017) (employing the term), *aff'd*, 728 F. App'x 200 (4th Cir. 2018); *General And Administrative Expense (G&A)*, Investopedia, https://www.investopedia.com/terms/g/general-and-administrative-expenses.asp (last updated July 10, 2020).

[6] Neither side has submitted the Subject Agreements as exhibits.

According to MCS, it performed work for all of the Subject Projects.  *Id.* ¶ 19; *see also, e.g.*, *id.* ¶¶ 22, 31, 52, 66, 76, 83.  Sayers Construction received payment for all of the Subject Projects; the payment represented, in part, the value of the work performed by MCS.  *Id.* ¶¶ 23, 33, 39, 48, 62, 75, 86; *see also id.* ¶ 205.  Plaintiff asserts that Sayers Construction "had a duty to remit payment to MCS for payments received by Sayers Construction for MCS's work."  *Id.* ¶ 204.  But, according to MCS, Sayers Construction has, in bad faith, withheld payment owed to MCS for the Subject Projects.  *Id.*  ¶¶ 24, 34, 40, 49, 63, 77, 88.

In Count XIII, MCS asserts that Mr. Sayers knowingly attempted to retain for himself the funds owed to MCS.  *See id.* ¶¶ 211-12.  The suit alleges, *id.* ¶¶ 206-09:

> 206.  Pursuant to the Subject Agreements . . . the funds received by Sayers Construction for MCS's work were to be held by Mark Sayers, in trust for the benefit of MCS.

> 207. Amounts owed to MCS for MCS's work on the Subject Projects were in fact received and held by Mark Sayers personally, and in his individual capacity.

> 208. Mark Sayers, as the director, manager, or officer of Sayers Construction was the sole person who directed what happened to the funds owed to MCS.

> 209. Mark Sayers at all times relevant, acted as the managing agent of the amounts owed to MCS for MCS's work on the Subject Projects and was in direct control of the funds received by Sayers Construction for MCS's work on the Subject Projects, and he was and is trustee of those funds.

## II. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013).  A Rule 12(b)(6) motion

constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of

relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint,"

*Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his

principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the*

*face of the complaint.*'"  *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts

are limited to considering the sufficiency of allegations set forth in the complaint and the

'documents attached or incorporated into the complaint.'"  *Zak v. Chelsea Therapeutics Int'l, Ltd.*,

780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448).

Ordinarily, the court "may not consider any documents that are outside of the complaint, or not

expressly incorporated therein[.]"  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th

Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see*

*Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may

consider documents beyond the complaint without converting the motion to dismiss to one for

summary judgment.  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

In particular, a court may properly consider documents that are "explicitly incorporated into the

complaint by reference and those attached to the complaint as exhibits."  *Goines*, 822 F.3d at 166

(citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir.

2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

However, "before treating the contents of an attached or incorporated document as true,

the district court should consider the nature of the document and why the plaintiff attached it."

*Goines*, 822 F.3d at 167.  Of import here, "[w]hen the plaintiff attaches or incorporates a document

upon which his claim is based, or when the complaint otherwise shows that the plaintiff has

adopted the contents of the document, crediting the document over conflicting allegations in the

complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As mentioned, the Second Amended Complaint is supported by nine exhibits. ECF 57-1 to ECF 57-9. ECF 57-1 contains the Teaming Agreement, which is explicitly referenced and

incorporated into the Second Amended Complaint.  ECF 57, ¶ 12.[7]   ECF 57-2, 57-4, 57-6, and 57-8 contain payment bonds issued by the Surety Defendants as to the Subject Projects.  And, ECF 57-3, 57-5, 57-7, and 57-9 contain notices of claim as to the payment bonds, sent by MCS to the Surety Defendants.  The exhibits containing both the payment bonds and the notices of claim are explicitly referenced and incorporated into the Second Amended Complaint.  ECF 57, ¶¶ 21, 25, 37, 42, 46, 50, 59, 64.   Therefore, I may consider all of the exhibits appended to the Second Amended Complaint.

### III.  Discussion

### A.

As indicated, Count XIII lodges a claim against Mr. Sayers for breach of fiduciary duty.  The parties seem to agree that Maryland law governs as to Count XIII.  *See* ECF 58 at 4-12 (defense discussion of fiduciary duty under Maryland law); ECF 64 at 5-14 (plaintiff's discussion under Maryland law).  Relatedly, ¶ 27 of the Teaming Agreement, titled "Governing Law," states that the Agreement shall be governed by Maryland law.  ECF 57-1 at 8.[8]

Until recently, courts have not entirely agreed on whether Maryland law recognizes an independent cause of action for breach of fiduciary duty.  *Plank v. Cherneski*, 469 Md. 548, 558, 231 A.3d 436, 442 (2020).   The confusion stemmed from the decision of the Maryland Court of Appeals in *Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 521 (1997), which has been subject to varying interpretations.  *Compare, e.g.*, *International Brotherhood of Teamsters v. Willis Corroon Corp.*, 369 Md. 724, 727 n.1, 801 A.2d 1050, 1052 n.1 (2002) (stating that, as pointed out in *Kann*, "Maryland does not recognize a separate tort action for breach of fiduciary duty")

---

[7] The Teaming Agreement is also appended to MCS's opposition to the Motion.

[8] But, Count XIII alleges breach of fiduciary duty, not breach of contract.

*and Swedish Civil Aviation Administration  v. Project Management Enterprises, Inc.*, 190 F. Supp.

2d 785, 801 (D. Md. 2002) (concluding that "there is no independent tort for breach of fiduciary

duty in Maryland") *with Adobe Sys. Inc. v. Gardiner*, 300 F. Supp. 3d 718, 726 (D. Md. 2018)

("*Kann* just as clearly stated that such a claim could be asserted if it involved an identified fiduciary

relationship and an identified breach.").

However, in 2020 the Maryland Court of Appeals clarified that in Maryland "a breach of

fiduciary duty may be actionable as an independent cause of action."  *Plank*, 469 Md. at 598, 231

A.3d at 465.  The *Plank* Court noted that its approach "is consistent with" the treatment of breach

of fiduciary duty in the Restatement (Third) of Torts: Liability for Economic Harm § 16 (Am.

Law. Inst. 2020) ("Restatement").  *Plank*, 469 Md. at 602, 231 A.3d at 468.

Nevertheless, "not every breach of fiduciary claim will entitle the plaintiff to damages at

law, and the right to a trial by jury."  *Id.* at 599, 231 A.3d at 466.  The *Plank* Court explained, in

pertinent part, *id.* (citation omitted):

> To establish a breach of fiduciary duty as an independent cause of action, a plaintiff
> must show: "(i) the existence of a fiduciary relationship; (ii) breach of the duty
> owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary." . . . . If
> a plaintiff describes a fiduciary relationship, identifies a breach, and requests a
> remedy historically recognized by statute, contract, or common law applicable to
> the specific type of fiduciary relationship and the specific breach is alleged, a court
> should permit the count to proceed. The cause of action may be pleaded without
> limitation as to whether there is another viable cause of action to address the same
> conduct.

*See also ComRent Int'l, LLC v. Smidlein*, RDB-20-3356, 2021 WL 252554, at *8 (D. Md. Jan. 26,

2021) (stating that *Plank* recognized an independent action for breach of fiduciary duty).

In the Motion, Mr. Sayers does not advance the argument that Count XIII must fail because

MCS cannot bring a standalone claim for breach of fiduciary duty.  Rather, the nub of the dispute

is whether plaintiff has alleged the existence of a fiduciary relationship between Mr. Sayers and

MCS.  Moreover, both sides seem to assume that Count XIII sounds in tort.  *See, e.g.*, ECF 58 at 9, 11; ECF 64 at 11.

**B.**

"A fiduciary duty is, in general, a duty to act for the benefit of another on matters within the scope of the parties' relationship."  Restatement § 16 cmt. a.  "[F]iduciary relationships can be created by common law, by statute, or by contract, and can have different characteristics.  'Well-known examples of habitual or categorical fiduciary relationships include those between trustees and beneficiaries, agents and principals, directors and corporations, lawyers and clients, and guardians and wards, as well as the relationship among partners.'"  *Plank*, 469 Md. at 598, 231 A.3d at 465 (citation omitted).  Moreover, the "'particular obligations'" of a fiduciary depend on "'the precise relationship between the parties and on the surrounding law.'"  *Id.* at 601, 467 (quoting Restatement § 16 cmt. a).

Because Sayers Construction is an LLC, the law concerning such entities is relevant.  An LLC is an "unincorporated business organization."  Md. Code. (2014 Repl. Vol., 2020 Supp.), § 4A-101(l) of the Corporations and Associations Article ("C.A.").  "The owners of the LLC are referred to as 'members.'"  *Plank*, 469 Md. at 571, 231 A.3d at 449 (quoting C.A. § 4A-101(m)).

As noted, MCS alleges that Mr. Sayers is "the officer, director, or agent in control of Sayers Construction."  ECF 57, ¶ 3. Mr. Sayers asserts that he is the managing member of Sayers Construction, ECF 58 at 2, which MCS does not dispute.  *See, e.g.*, ECF 64 at 11.

Under Maryland law, an LLC is distinct from its members.  C.A. §4A-301 provides that, generally, "no member [of an LLC] shall be personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company."  *See 7222 Ambassador Rd., LLC v. Nat'l Ctr. on*

-13-

*Institutions & Alternatives, Inc.*, 470 Md. 66, 70, 233 A.3d 124, 126–27 (2020) ("Like shareholders of a corporation, but unlike partners in a general partnership, the members of an LLC have the shield of limited liability."). Thus, while "managing members of an LLC owe common law fiduciary duties to the LLC and to the other members based on principles of agency," *Plank*, 469 Md. at 572, 231 A.3d at 450, such duties ordinarily do not extend to third parties.

However, Maryland courts have recognized that in certain exceptional scenarios, discussed *infra*, the shield of limited liability may not apply.

## C.

Count XIII does not invoke any statute or reference either the Teaming Agreement or the Subject Agreements as the basis for the claim of breach of fiduciary duty by Mr. Sayers. Rather, the claim appears to be based entirely on common law. *See* ECF 57 at 34-26. Nevertheless, defendant insists that MCS is foreclosed from claiming a fiduciary relationship based either on statute or contract. *See* ECF 58 at 5-10.

The gist of Mr. Sayers's argument as to a statutory source of duty is that plaintiff is attempting an end-run around the Maryland Construction Trust Fund Statute. The purpose of that statute is to "'protect subcontractors from dishonest practices by general contractors and other subcontractors for whom they might work.'" *C & B Constr., Inc. v. Dashiell*, 460 Md. 272, 280, 190 A.3d 271, 276 (2018) (citation omitted). To "'ensure that funds disbursed by an owner or contractor for payment to a subcontractor for work done are actually paid to the subcontractor,' the statute impose[s] personal liability on the directors, officers, and managing agents of a contractor corporation when they improperly use the funds held in trust, for purposes beyond the payment of subcontractors.'" *Id.* at 281, 190 A.3d at 276 (citation omitted) (discussing R.P. §§ 9-

201(b), 9-202).  Thus, the statute seems designed to address the scenario alleged here, at least at first glance.

However, it is undisputed that MCS no longer asserts a claim under the Construction Trust Fund Statute and that the statute would not apply to the Subject Projects at issue here.  *See* ECF 58 at 6; ECF 64 at 14.  R.P. § 9-204(a) explicitly limits the application of the Construction Trust Fund Statute to contracts subject to Maryland's Little Miller Act, Md. Code (2015 Repl. Vol.), § 17-101 *et seq.* of the State Finance and Procurement Article, or to Maryland's Mechanics' Lien Statute, R.P. § 9-102.  *C & B Constr.*, 460 Md. at 282, 190 A.3d at 277.  The Little Miller Act "'applies only to state-financed buildings.'"  *Id.* at 286 (citation omitted).  And, the Mechanics' Lien Statute applies to "[e]very building erected and every building repaired, rebuilt, or improved to the extent of 15 percent of its value . . . ."  R.P. § 9-102(a).  MCS does not allege that the Subject Projects are covered by the Little Miller Act or the Mechanics' Lien Statute.  Indeed, plaintiff concedes that the Construction Trust Fund Statute "does not apply."  ECF 64 at 14.  MCS asserts that the "Maryland Construction Trust Fund Statute is a codification of common law fiduciary principles applicable here . . . ."  ECF 64 at 14.[9]

With respect to contract, Mr. Sayers emphasizes that he was not a party to the Teaming Agreement.  ECF 58 at 9.  Rather, Sayers Construction was a party.  Thus, in his view, MCS cannot claim that the Agreement gave rise to a fiduciary relationship.  MCS has no meaningful response to this argument.  *See* ECF 64 at 11.  Plainly, the Agreement did not explicitly create a fiduciary relationship or put Mr. Sayers on notice that he was "undertaking to act on behalf and for the

---

[9] I address, *infra*, plaintiff's contention that Maryland common law compels the determination that a fiduciary relationship existed here.

benefit of" MCS in his individual capacity. *MEE Direct LLC v. Tran Source Logistics, Inc.*, JKB-13-455, 2014 WL 585637, at *7 (D. Md. Feb. 14, 2014), *aff'd,* 584 F. App'x 120 (4th Cir. 2014).

Therefore, I conclude that there is no statutory or contractual basis that gives rise to a fiduciary duty owed by Mr. Sayers to MCS.

### D.

Mr. Sayers contends that MCS does not allege a fiduciary relationship arising from Maryland common law.  ECF 58 at 10-12.  MCS counters that "Mr. Sayers acquired a fiduciary role as a trustee of a constructive trust for the benefit of MCS and agent of MCS."  ECF 64 at 9. MCS does not contend that there was an express trust, however.  In his reply, Mr. Sayers posits that plaintiff does not allege any relationship between MCS and Mr. Sayers, let alone a fiduciary relationship, and that plaintiff misunderstands the law regarding the shield of limited liability.  ECF 69 at 3-4, 7-9.

As discussed, an LLC is distinct from its members, and ordinarily members may not be held liable for the wrongdoing of the entity.  But, there are exceptions to the general rule.  In this regard, Maryland law concerning corporations provides guidance.  *See, e.g.*, *Serio v. Baystate Props., LLC*, 209 Md. App. 545, 560, 60 A.3d 475, 484 (2013).

The concept of a corporation as a separate legal entity "is expressed by the colorful metaphor of the corporate veil, which presumes that acts of the corporation are not acts of the shareholder." *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987).  The corporate veil doctrine "is a basic attribute of the corporate form; it encourages business investment and fosters stability in commercial transactions."  *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1047 (4th Cir. 1988).

In the seminal Maryland case of *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 309, 340 A.2d 225, 234 (1975), the Maryland Court of Appeals observed that, in the absence of fraud or unless necessary to enforce a paramount equity, shareholders are generally not liable for the acts of a corporation.  It said, *id*. at 310, 340 A.2d at 234:

> The most frequently enunciated rule in Maryland is that although courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity.

In *Cancun Adventure*, 862 F.2d at 1047, the Fourth Circuit recognized that "[s]ubstantial ownership of a corporation by a single individual is not alone sufficient to pierce the corporate veil."  Although the *Cancun* Court acknowledged that the corporate veil "is not sacrosanct," it cautioned that "[a] court's power to pierce the corporate veil and impose liability on a shareholder in his individual capacity [must] be exercised with extreme circumspection."  *Id*.

A party may seek to pierce the corporate veil when "'necessary to prevent fraud or enforce a paramount equity.'"  *Hildreth v. Tidewater Equip. Co., Inc*., 378 Md. 724, 733, 838 A.2d 1204, 1209 (2003) (citations omitted).  But, in Maryland "the fiction of the wholly separate corporate form is jealously guarded . . . ."  *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 552 (D. Md. 2011).  Indeed, "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil."  *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 309, 728 A.2d 783, 790-91 (1999).

Notably, the "[p]ower to pierce the corporate veil is to be exercised 'reluctantly' and 'cautiously,'"  *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Co.*, 540 F.2d 681, 683 (4th Cir. 1976) (citation omitted), and the challenge facing a party seeking to pierce the corporate veil has been described as "herculean."  *Dixon v. Process Corp.*, 38 Md. App. 644, 645-46, 382 A.2d 893,

894-95 (1978).  Even where a party seeks to hold a shareholder liable for conduct that was "clearly designed to cause the corporation to evade a legal obligation" and "had the effect of rendering [the corporation] 'all but insolvent,'" paramount equity does not justify piercing the veil.  *Hildreth*, 378 Md. at 738-39, 838 A.2d at 1212-13 (quoting *Bart Arconti*, 275 Md. at 305, 340 A.2d at 231).  Indeed, in *Ramlall v. Mobile Pro Corp.*, 202 Md. App. 20, 31, 30 A.3d 1003, 1009 (2011), the Maryland Court of Special Appeals observed that "no precedent" existed to support veil piercing on the basis of a "paramount equity."  MCS does not identify any such precedent established since that decision.

Of import here, Maryland courts have "recognized the availability of an action to disregard a limited liability entity congruent with the equitable remedy of piercing the corporate veil."  *Serio*, 209 Md. App. at 558, 60 A.3d at 483; *see Cavey v. Mach Trucking LLC*, GLR-16-1339, 2016 WL 5462791, at *4 (D. Md. Sept. 29, 2016).  Under Maryland law a corporate *officer* may be held personally liable for a tortious act he "'personally commits, inspires, or participates in," even if the tortious act was "'performed in the name of the corporation.'"  *Summit DNA, L.L.C. v. Proove Biosciences, Inc.*, WDQ-14-1329, 2015 WL 3901973, at *6 (D. Md. June 23, 2015) (quoting *Toliver v. Waicker*, 210 Md. App. 52, 62 A.3d 200, 205–06 (2013)).  An officer "may also be liable despite limitations on his or her liability when he or she 'is present on a daily basis during commission of the tort and gives direct orders that cause commission of the tort.'"  *Allen v. Dackman*, 413 Md. 132, 153, 991 A.2d 1216, 1228 (2010) (citation omitted).  The focus is on the officer's participation in the wrongful act.  *Metromedia Co. v. WCBM Maryland, Inc.*, 327 Md. 514, 520, 610 A.2d 791, 794 (1992).

In *Dackman*, 413 Md. 132, 991 A.2d 1216, the Maryland Court of Appeals reviewed existing law regarding individual liability of officers and directors of corporations.  The court

concluded that the same principles apply to members of an LLC, stating: "An LLC member is liable for torts he or she personally commits, inspires, or participates in because he or she personally committed a wrong, not 'solely' because he or she is a member of the LLC." *Id.* at 154, 991 A.2d at 1228; *see Arkansas Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 647 (D. Md. 2020) (citing *Dackman* for the same proposition).

In plaintiff's view, Mr. Sayers personally and directly participated in the withholding of payment from plaintiff. According to MCS, given Mr. Sayers's participation in a tortious act, the shield of liability must give way. *See* ECF 64 at 9-11. The allegations that support this claim are woefully thin. Most of the Second Amended Complaint is directed toward the alleged misconduct of Sayers Construction, rather than Mr. Sayers. As noted, MCS alleges that *Sayers Construction* received payment on the Subject Projects; SC had a duty to remit payment to MCS; and SC withheld payment owed to MCS, in bad faith. *See, e.g.*, ECF 57, ¶¶ 23, 24, 33, 34, 204, 205.

However, in Count XIII plaintiff also asserts that *Mr. Sayers* received payment owed to MCS in his individual capacity; controlled those funds; and knowingly attempted to keep those funds to himself. ECF 57, ¶¶ 206-09, 211-12. Although Mr. Sayers asserts that "MCS does not make any factual allegation that Mr. Sayers took personal possession of the property at issue," ECF 69 at 5, he ignores the above allegations in Count XIII, which concern his alleged personal misconduct. Thus, the next question in the analysis is whether Mr. Sayers had a fiduciary relationship with MCS.

MCS advances the theory that, in accepting payment owed to it, Mr. Sayers held the money in constructive trust for MCS and/or acted as MCS's agent, thus incurring a fiduciary duty owed to MCS. ECF 64 at 9-10. With respect to agency principles, plaintiff provides virtually no discussion of the law, and asserts in conclusory fashion that Mr. Sayers's receipt of payment owed

to MCS reflected his intent to act as an agent as to MCS.  ECF 64 at 9-10.  The only case cited by plaintiff in support, albeit without any explanation, is *Green v. H & R Block, Inc.*, 355 Md. 488, 503, 735 A.2d 1039, 1048 (1999).

In *Green*, the Maryland Court of Appeals engaged in an in-depth assessment of the relationship between a tax preparation and refund service provider and its customers.  *See id.* at 503-17, 735 A.2d at 1048-55.  Those facts bear little resemblance to this case.  Plaintiff fails to explain how the mere allegation that Mr. Sayers received but then withheld payment plausibly alleges that he was MCS's agent, despite the fact that Mr. Sayers was not a party to the Teaming Agreement or the Subject Agreements and Sayers Construction also allegedly withheld payment from plaintiff.

More of the opposition focuses on principles of constructive trust.  *See* ECF 64 at 5-11.  A constructive trust is an equitable remedy, not a cause of action.  *Lyon v. Campbell*, 33 F. App'x 659, 663 (4th Cir. 2002) (per curiam) (applying Maryland law).  It "may be imposed upon specific property 'by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property.'"  *Hess v. Kafka*, 221 F. Supp. 3d 669, 673 (D. Md. 2016) (quoting *Wimmer v. Wimmer*, 287 Md. 663, 668, 414 A.2d 1254 (1980)).  In other words, the purpose of a constructive trust is to provide redress for unjust enrichment.  *Washington Suburban Sanitary Commission v. Utilities, Inc.*, 365 Md. 1, 39, 775 A.2d 1178, 1200 (2001).  Moreover, a constructive trust "may arise because the property was acquired through duress, fraud, undue influence or mistake, or through a breach of fiduciary duty, or through wrongful disposition of another's property.'"  *Hess*, 221 F. Supp. 3d. at 673 (quoting *City of Annapolis v. West Annapolis Fire and Improvement Co.*, 264 Md. 729, 288 A.2d 151, 155 (1972)); *see Bank of Am. Corp. v. Gibbons*, 173 Md. App. 261, 268, 918 A.2d 565, 569

(2007) ("'[A] constructive trust [may] be imposed to avoid unjust enrichment arising out of . . . the violation of any fiduciary duty or any other wrongdoing.'") (citation omitted; brackets in *Gibbons*).

The above principles elucidate the error in MCS's argument. In short, the argument proceeds as follows. According to plaintiff, Mr. Sayers improperly retained money to which plaintiff was entitled. Therefore, plaintiff asks the Court to impose a constructive trust on those funds. And, in plaintiff's view, the applicability of a constructive trust somehow reflects that Mr. Sayers owed a fiduciary duty to plaintiff. *See* ECF 64 at 9-11. The problem here is that plaintiff confuses a remedy (constructive trust) with a source of fiduciary duty. As noted, a court may impose a constructive trust to remedy a breach of fiduciary duty. But, a court must of course first determine the existence of a fiduciary relationship. The availability of the remedy does not establish a fiduciary relationship.

The cases cited by MCS regarding constructive trusts are not to the contrary. Indeed, they are inapposite. *Wimmer*, 287 Md. 663, 414 A.2d 1254, *Shaffer v. Lohr*, 264 Md. 397, 287 A.2d 42 (1972), and *Springer v. Springer*, 144 Md. 465, 125 A. 162, 167 (1924), each involved disputes between family members or former spouses and contain no discussion of fiduciary relationships.

Accordingly, I conclude that MCS has not plausibly alleged that Mr. Sayers owed MCS a fiduciary duty.

## V. Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 58).

An Order follows.

Date: April 15, 2021                           _____/s/_____
                                              Ellen L. Hollander
                                              United States District Judge